Good morning, Your Honors. May it please the Court, my name is Katherine Hart and I'm representing the petitioner, Darryl Stevenson, in this habeas case. My client was convicted of second-degree murder in state court on a theory of aiding and abetting and vicarious arming. The theory was that my client, to facilitate the killing of Bernice Williams, that my client drove directly at Mr. Williams and there was also another victim there, Mr. Kelly Reeves. After my client was convicted in state court, approximately a month or so later and before sentencing, the prosecution found a tape-recorded statement that was given by the key witness, Kelly Reeves, and that tape-recorded statement was never disclosed to the defense before trial. There was then, of course, a motion for new trial, and this case has basically wound its way through state court and federal court and district court. And at this point in time, my purpose is to try to persuade you that this missing evidence, this undisclosed evidence, which was a Brady violation, no evidence that it was an intentional, malicious withholding at all, but was a Brady violation, that this was material within the meaning of Bagley and Kiles v. Whitley. Material evidence, of course, it's a well-known standard. The standard has to be a reasonable probability that the result would have been different had we had that evidence. Well, the real question is whether or not that evidence is exculpatory, isn't it? Exactly. And if a careful analysis and careful scrutiny and careful examination of that tape-recorded statement is, I submit, powerful proof that it is exculpatory because in three or four places, as I pointed out in my brief, Kelly Reeves provides a statement that my client was trying to turn away and that he was trying to turn away and that if he had hit them directly, that he would have killed the two of them. You – I didn't see the – I saw the turn word in there. I'm not sure that I saw the away so that he wouldn't hit them. Well, if it – if you look at page 38 of the excerpt of Record II, which has the transcript of the tape-recorded statement, it says what it is he turned it. And as he turned it, we hit the – where the light and bumper are. And then he goes on to say, if he would have hit us front on, we both would have been killed. That's in the middle of that page. If he would have hit us front on, we both would have been killed. But when he turned it – and there are other places in which he talks about the turn. Page 28, you know how you can do a sharp turn, a turn. They did a half you fell into the washing machine. Page 37, my client peeled out, looked like he wanted to turn off and take off. Then on page 38, it says twice, he turned it. If he – if he – he would have hit us straight on and we would have been killed. Now, the prosecution's – oh, yes. My understanding, yeah, is that they – that the killing was done by shooting? The killing was done by shooting. The co-defendant was in the passenger side. My client was driving the Toyota 4Runner. And then the co-defendant shot out of the passenger side and shot Bernest Williams 11 times, shot him in the chin, the back, kidneys, lungs, and, you know, of course, he died almost immediately right there. So the prosecution's theory, and it was hammered down in final argument, the prosecution's theory was that my client drove the car directly at them. And when Kelly Reeves, this witness who gave this pretrial undisclosed statement, when he testified at trial, he testified that the car went straight at them. Well, the trial judge said that it could be – you could read it both – two ways. That is, that he was actually trying to make it easier for the shooter. I guess – I'm sorry. I guess I've forgotten that point. I've read the record. I do remember the trial judge saying that Kelly Reeves' statements were in jumps and starts and everything. Yeah. And, of course, at times Kelly Reeves' both his trial testimony and this undisclosed at the time tape recorded statement, I mean, some of the statements are murky. But when he says at least four times about the turn, and then when he says that they would have been hit, they would have been killed if he had been hit straight on, but what he did is he turned it, really that seems to me to be very significant in light of – in light of the theory of the prosecution that the car was – well, they didn't say demoniacally headed toward, but the car was headed towards there. And the whole theory was the car was headed towards there and was going to mow down and run down those people, and that was why it facilitated the shooting of the passenger, whereas if you accept my client's theory, which unfortunately was not corroborated at trial, that he was turning to get out of there and then unable to do a full U-turn. He did a partial U-turn and then hit this debris that was in the roadway and the refrigerator. So – The washing machine? Yes. Yes. Washing – yeah. The washing machine was in the street. It was in the street as part of street cleanup where materials are sitting there in the street, and he hit that. But at trial, we have this evolution, this migration of Kelly Reeves' statement where in this pretrial statement, he says that he – that if the car had not turned, that he would have been hit and they would have killed us. But then at the trial, he's talking about how the car came directly at them and hit them. And in his pretrial statement, he jumps out of the way and only a portion of his body is hit. The detective, when he's questioning him, says, you look like you're kind of dirty. He also says that the front tires ran over him. Exactly. Exactly. When you look at all of the evidence in this case and you look at the importance of the mental intent for murder, then whether or not my client's version was correct that he turned is really the fulcrum, is really the crux of this case. My client testified at trial that he tried to do – he tried to go straight on North Tutman, but that there were people there. He was – and he did not want to hit the people, so he turned. Now, Kelly Reeves doesn't say there were people there blocking, but he did say that my client turned. You know, you would almost have thought that my client – Was Kelly Reeves – he was the principal witness, but he wasn't hurt, was he? He was not really hurt. He may have had a mark on him, but he wasn't hurt. The statement was if he hadn't turned, they would have killed both of us. Yes. And the car never ran over Bernest Williams, who died. The testimony of the pathologist, Vanu Gopal, was that there was no evidence whatsoever that had been run over. There was a mark on an ankle that might have been caused by some minor collision. Yes, Your Honor. Can I ask you a question, please? Yes. Is it enough for materiality under Supreme Court precedent if Stevenson could have impeached Reeves with that tape? Your Honor, it's material because the evidence from this tape is sufficient to undermine confidence in the outcome of the trial, and that is the test of materiality. And in Kiles v. Whitley, where pretrial statements involving descriptions of persons of assailants were not disclosed and there was a marked difference between those pretrial descriptions, the Court there says to take a very detailed look at the evidence. In this case, Your Honor, if you take a detailed look at the evidence, there really is not other corroboration that the car went directly, aiming directly for Bernest Williams and Kelly Reeves. Other precipient witnesses to that event said that they were down the street, it looked like the car was going there, but they either didn't see the washing machine or they didn't see anybody hit or they said they were looking, as in Wyatt Woods, he was looking through a doorway inside, other people were playing basketball and not paying specific attention. So in this case, the materiality is that there is a reasonable probability, had the jury heard this evidence about the attempting to turn so as to avoid hitting the Bernest Williams, the victim, and Kelly Reeves, that the jury could have decided that my client's intent was to leave the scene and my client would be guilty at most of being an accessory after the fact, although he wasn't charged with that, but that he would not have been guilty of somebody who had the mindset and that malice of forethought mindset to have aided and abetted a murder. Kagan. You have used your time. Are there any further questions? None here. Thank you. Thank you. Good morning. May it please the Court. Justin Riley on behalf of the Warden. Appellant now basically re-argues the evidence, presents a conflicting inference on the audio tape, and asks this Court to disagree with the State court on what the inferences should be from that audio tape. Yes. What did Kelly Reeves testify to at trial? Kelly Reeves testified that there was an unobstructed path for Stevenson and the co-defendant to escape. Kelly Reeves said he was run down by the car. He heard the shots. He ran away. He got scraped up a little bit. I can't remember where, cuts and bruises, nothing very serious. So Kelly Reeves' testimony was in direct contradiction to Appellant's current version of what the audio tape says. And this Court needs to ask itself, among other things, all the deference that should be afforded the State court's factual determination, what would Appellant have done at trial with this audio tape? As Judge Gould indicates, maybe he would have been impeached with it. He would have had the opportunity to clarify what the tape was. As this Court probably saw through the transcript, this was not the model of clarity. I don't think Mr. Reeves said anything all that clearly in the entire audio tape. Was Reeves impeached otherwise? I'm sure he was. I don't recall specifically. He was questioned about the contact that the vehicle made and all those sorts of things. Stevenson's- Pardon? Yes. Counsel, can I focus you on a question? Absolutely. Is it correct that Reeves at trial said that Stevenson drove directly at him, which seems, if that's true, in that trial that's at least arguably contradicted by the tape saying that he made turns? Excuse me. I don't know if- I don't have that portion of the transcript in front of me. I don't know if Mr. Reeves said directly, used the word directly. But the term directly is a red herring given the State court's determination of the facts here. It wasn't necessarily that Mr. Stevenson was driving straight at the victims. Mr. Stevenson drove in such a way as to get himself, the vehicle, and the shooter directly over to the victims. It really doesn't matter for the purposes of the prosecution's theory that the wheels of the vehicle were straight or they were turned or whatever it was. It was the act of going over to the victims and making contact with the vehicle and shooting them from the vantage point. It didn't really matter that it was a straight maneuver or a turning maneuver or anything like that. It was the physical act of intentionally driving over to the victims. Well, I just have some trouble trying to picture this because it seemed to me, I don't see how the guy could shoot from the passenger side. Yes. It would seem to me that it would be more difficult to shoot somebody if you were heading straight at them than if you were turned. Oh, absolutely. Absolutely. And that's further evidence of the fact that Mr. Stevenson needed to put the sight of the vehicle toward the victims. It was not charged and it was not argued that Mr. Stevenson, the appellant here, actually tried to himself injure the victims with the vehicle. It was more the facilitation, the aiding and abetting, getting the vehicle over into a position where it could be shot, and he needed to have the sight of the vehicle facing the victim as opposed to the front of the vehicle. So that was consistent with the State court's factual finding. And Your Honor brings up a very important point. Is that what the State court meant when it said that it could go be read two ways? I believe that that is definitely a reasonable interpretation of what the State court  said. And along those lines, and going toward Your Honor's comment about trouble picturing, the appellant here is asking this Court to disagree with the factual findings, and importantly, we don't have all of the information here. Crucially, we don't have the officer's summary of the tape. We don't have the actual audio recording. We don't have all the exhibits depicting the scene. I read through the record, and there are diagrams and pictures of the scene. And the trial court that made this factual determination knew the setting, knew where all the debris was, knew where the vehicle was facing, how wide the road was, all these things that this Court doesn't have in front of us. And at the very most, this Court is being asked to choose appellant's conflicting inference over the State court's. And the Court is asking this Court to do so without all of the crucial information. Well, why don't we have the crucial information? You can get it to us. Pardon me? You can supply it to us. It wasn't part of the State appellant record, and I don't have the burden. Yes, I know. Yeah. The appellant has the burden to show this Court affirmatively. The State has the ability to get the information. We have the ability to do so, but we don't have the ability to bolster an already presumably valid conviction. We have the duty to present the State court record, which we did. I did go looking for some of the diagrams. We went looking for the audio tape. When you're arguing here that we can't make an informed judgment because we don't have the information that you didn't supply us with, I think it's an argument that falls a little short. You have the ability to get us the information, and so you can't really argue now that we have the information. It doesn't exist anymore. I did try. I did try. At this late date with these late claims, the Petitioner does have the duty to affirmatively show it. What we do have is the transcript, correct? Absolutely. We do. And we have the trial testimony. Yes. And they are in conflict. Pardon me? And they are in conflict. Whether it's material or not is a matter to be determined. There are conflicting inferences. Yes. But a U-turn is different from driving straight on. I mean, that's fairly – that's a fairly – it is different. I completely agree. And we don't know where the vehicle was or where the victims were in relation to the vehicle. And as Judge Schroeder pointed out, and as I tried to argue, if you're going to facilitate somebody shooting out of a passenger window, you don't want to drive straight on. It will take some type of turn, depending on where the vehicles are. And we just don't know any of that. May I follow up just a little, if I could interject another question? Yes. I'll tell you what's bothering me about this case. You know, if the tape had been produced in a timely way, then you could have your argument and the accountant could have their argument. That's true. You could have your argument to the jury, everybody would have backed. But none of that happened. Everything's coming up after he's already been convicted. And so what bothers me is if someone's in prison for life, for aiding and abetting, if it's debatable, you know, if Stevenson has an argument that it's a fair impeachment with the tape, you've got an argument that really didn't matter because he just had to get his card close enough to the jury. You know, why shouldn't that argument have been made at trial? And if it wasn't made at trial, why shouldn't we reverse and say that it's being tried? Good question, Your Honor. The fact that there is debatable inferences, as the United States Supreme Court has pointed out in Rice v. Collins just recently, debatable inferences are not enough to send a presumably valid State court conviction back and overturn it. That's not under the unreasonable determination of the FACTS clause of the ADPA. It's just not enough. And the right of Rice is not a Brady case. That's true. That's true. It is an unreasonable determination of the FACTS case, which is. Right. That's different. This is a factual determination I believe the parties are arguing, and I believe the parties are also consistently arguing that it falls under the unreasonable determination of the FACTS clause. You're absolutely correct that there were different constitutional theories. So because of the debatable inferences not being sufficient, it's basically a deference argument that I'd be making. The State court did look at this evidence and made a determination based on materiality, and this was essentially identical. The information presented in the audio tape was essentially identical to the information presented at trial in the officer's summary. Thank you. I believe, unless there are any questions, I'm prepared to submit. Thank you. Are there any questions of the Appellant's counsel? Thank you. I know I used up my time. May I just say one thing that doesn't have anything to do with the argument? I did try to locate that tape. I went to the Fresno County Superior Court and the exhibit clerk, and she couldn't find it. I just want you to know that when we come to this Court, we don't we try. Both sides tried to find it. Thank you. The matter just argued is submitted for decision.
judges: Schroeder, Thomas, Gould